*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHERRIE LEE LILLIS,

Defendant-Appellant.

FOR PUBLICATION
July 14, 2026
11:15 AM

No. 372637
Montcalm Circuit Court
LC No. 2023-030493-FH

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

KOROBKIN, J.

Defendant, Sherrie Lee Lillis, appeals as on leave granted[1] the trial court's order sentencing her to 12 months in jail following a violation of the terms of her probation. Defendant argues that a special probation condition restricting her contact with her husband was not rehabilitative and unconstitutionally infringed upon her freedom of association and the privacy of her spousal relationship. Because defendant did not preserve this issue by raising it before the trial court, our review is for plain error. As discussed in this opinion, we recognize that the probation condition at issue did implicate defendant's constitutional rights. We therefore apply a special-scrutiny standard to examine whether the condition was reasonably related to defendant's rehabilitation and narrowly tailored to avoid unnecessary interference with the constitutional rights at issue. On the record before us, we conclude that the trial court did not commit plain error. Therefore, we affirm.

## I. BACKGROUND AND FACTS

Defendant pleaded guilty to possession of methamphetamine, MCL 333.7403(2)(b)(*i*), in September 2023. Defendant's presentence investigation report (PSIR) recommended that she be sentenced to a three-year probation term subject to various conditions, including Special Probation Condition 9.04, which provided in pertinent part: "You must not have verbal, written, electronic,

---

[1] *People v Lillis*, 25 NW3d 127 (Mich, 2025).

or physical contact, without permission of the field agent, with anyone you know to have a felony record. . . ."

At her sentencing hearing in November 2023, defendant informed the trial court of her recent marriage to Trevis Beemer, who has a felony record. The trial court examined Beemer under oath, and Beemer disclosed that his criminal history included convictions for possession of methamphetamine and tampering with a monitoring device, among other offenses. Although the trial court expressed concern as to whether it was wise for defendant "to start a relationship or a marriage when [she was] just so newly into recovery," after hearing Beemer's testimony, the court authorized defendant's contact with Beemer "because he appear[ed] . . . to be sincere and clean." The trial court warned, however, that "in the event [Beemer] spins off sideways, [defendant would] have to disassociate with him" and that the trial court would revoke its permission for defendant to have contact with Beemer. The trial court ultimately sentenced defendant to three years of probation and adopted the various special conditions recommended in defendant's PSIR, including Special Probation Condition 9.04 with the exception that defendant could be in contact with Beemer if they were "both doing well in recovery."

In December 2023, defendant admitted to using methamphetamine following a positive drug test, and she pleaded guilty to violating a special probation condition that prohibited her from using controlled substances. In sentencing defendant for this violation, the trial court ordered that defendant's probation be continued but that defendant participate in and successfully complete inpatient treatment. The trial court also imposed Special Condition 9.80, which obligated defendant to successfully complete Adult Recovery Court (ARC) programming and to comply with the directives ordered by the ARC, and Special Condition 9.39, which required her to comply with the Michigan Department of Corrections Electronic Monitoring Program as directed by the ARC.

In February 2024, defendant appeared before the trial court for another probation violation hearing after the probation department reported that defendant had repeatedly failed to "abid[e] by her tether schedule due to being with her husband." Defendant pleaded guilty to violating Special Condition 9.39 by not complying with the tether schedule. Before accepting defendant's plea, the trial court stated that the violation would not result in the termination of probation, but would result in a "program sanction." The court also stated, pursuant to an agreement referenced by defense counsel, that defendant's contact with Beemer would be limited to transportation to "legitimate appointments" approved in advance by defendant's probation agent. The court also allowed defendant to have phone contact with Beemer. In imposing these restrictions, the court emphasized the importance of defendant's marriage being a "healthy relationship" and Beemer being "clean and sober." The court further expounded that "people, places, things take people down, and we don't want that for you."

Later that month, defendant was reported again to have repeatedly failed to "abid[e] by her tether schedule due to being with her husband." At that point it appears that additional program sanctions and restrictions were handled directly by or through the ARC. It is not clear whether we have been provided with all of defendant's records from the ARC as part of this appeal, but we can glean from defendant's probation violation recommendation report that the ARC instructed defendant on March 4, 2024 that "she [wa]s not to have contact with her husband at all[.]" Thereafter, on March 21, 2024, defendant's probation agent learned that "defendant was

continuing to have contact with her husband," which prompted the agent to visit defendant's sober-living residence the following day. The agent told defendant that Beemer was arrested on March 21, 2024, and was being charged with possession of methamphetamine. While defendant's probation agent was interviewing defendant, Beemer called defendant; they spoke briefly, and when defendant hung up, she told the agent that "she was done." Following the interview, the ARC required defendant to serve 20 days in jail as a sanction and blocked defendant's number at the jail to prevent Beemer from contacting her.

On May 7, 2024, defendant's probation agent discovered that defendant and Beemer had spoken "by three way calling" on April 8, 2024, and on various dates in early May 2024. Defendant's probation agent thereafter reported that defendant had a clear disregard for the no-contact order with her husband "who was in active methamphetamine use until his arrest." As the agent concluded that defendant could not "be honest with her agent, the Judge, or the ARC team," it was determined that defendant would be unsuccessfully discharged from the ARC program.

On May 16, 2024, the trial court held another probation violation hearing at which defendant admitted to speaking with her husband through three-way calling and pleaded guilty to violating Special Probation Condition 9.04. The court sentenced defendant to 12 months in jail, with credit for 46 days served, and to complete an additional recovery program, at which point she would be unsuccessfully discharged from probation.

Defendant now appeals.[2]

## II. STANDARD OF REVIEW

Generally speaking, this Court "review[s] for an abuse of discretion a trial court's decision to set terms of probation." *People v Mineau*, 306 Mich App 325, 329; 855 NW2d 755 (2014) (quotation marks and citation omitted). Constitutional issues are reviewed de novo. *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018). Because defendant made no objection to the no-contact condition in the trial court proceedings, however, her challenge to that condition on appeal is unpreserved. See *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021) ("To preserve an issue, a party must raise it before the trial court."). This Court reviews unpreserved issues, whether of constitutional or nonconstitutional magnitude, for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To succeed under the plain-error standard, a defendant "bear[s] the burden of persuasion" and "must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant." *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006). Reversal is then warranted only if "the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. (cleaned up).

---

[2] This Court initially denied defendant's application for leave to appeal. *People v Lillis*, unpublished order of the Court of Appeals, entered November 14, 2024 (Docket No. 372637). Defendant then sought leave to appeal from our Supreme Court, which, in lieu of granting leave, remanded the case to us for consideration as on leave granted. *Lillis*, 25 NW3d at 127.

## III. ANALYSIS

Defendant contends on appeal that the trial court plainly erred by imposing and enforcing a probation condition that prohibited her from having contact with her husband. We disagree.

### A. MOOTNESS

As defendant has informed the Court that she was discharged from her sentence in 2025, her challenge to the no-contact probation condition is moot. See *People v Briseno*, 211 Mich App 11, 17; 535 NW2d 559 (1995) ("Where a subsequent event renders it impossible for this Court to fashion a remedy, the issue becomes moot."). "When the issues raised by a party on appeal are clearly moot, an appellate court should ordinarily decline to address the substantive issues raised in the appeal unless an exception to the mootness doctrine applies." *People v Richmond*, 486 Mich 29, 37; 782 NW2d 187 (2010). One such exception is when a case "involves issues of public significance [that] are likely to recur, yet evade judicial review." *People v Kaczmarek*, 464 Mich 478, 481; 628 NW2d 484 (2001).

We conclude that this exception applies here. This appeal requires deciding whether, in the presented circumstances, a probation condition prohibiting contact between spouses unconstitutionally infringes on the rights of the married defendant. This issue is of unique public significance, given the robust protection our law provides marriage. See, e.g., *Cochrane v Bd of Ed of Mesick Consol Sch Dist*, 360 Mich 390, 391; 103 NW2d 569 (1960) (noting the law's interest in "protect[ing] . . . the state of matrimony"). It is also likely to recur, yet evade judicial review, given the frequency with which probation conditions restrict contact with spouses, see, e.g., *United States v Hobbs*, 845 F3d 365, 367 (CA 8, 2016); *State v Martin*, 282 Or 583, 585; 580 P2d 536 (1978), and the limited probationary periods defendants are often sentenced to serve, see *People v Thue*, 336 Mich App 35, 39; 969 NW2d 346 (2021) (noting that "the relatively short timelines involved in probation cases compared with the often sluggish pace of the appellate process") (cleaned up). We also note that our Supreme Court has remanded this case to us for consideration as on leave granted. We therefore proceed to consider the merits of defendant's challenge to the probation condition.

### B. PROBATION CONDITION

In reviewing probation conditions, we remain mindful that "[p]robation is a matter of grace, not of right, and the trial court has broad discretion in determining the conditions to impose as part of probation." *People v Breeding*, 284 Mich App 471, 479-480; 772 NW2d 810 (2009). In addition to the mandatory probation conditions stated in MCL 771.3(1) and the discretionary conditions set forth in MCL 771.3(2), at its discretion, a trial "court may impose other lawful conditions of probation as the circumstances of the case require or warrant or as in its judgment are proper," MCL 771.3(3). Yet, although "a sentencing court has considerable discretion in setting conditions of probation," *People v Houston*, 237 Mich App 707, 719; 604 NW2d 706 (1999), that discretion is "tempered by the probation act's express limitations as well as the effect other laws might have on the probation act," *People v Hess*, ___ Mich ___, ___; ___ NW3d ___ (2026) (Docket No. 167895); slip op at 12.

Probation conditions may not "be imposed contrary to the authorization of the probation statute." *City of Detroit v Del Rio*, 10 Mich App 617, 620 n 3; 157 NW2d 324 (1968). Our Legislature has mandated that discretionary probation conditions "be individually tailored to the probationer, must specifically address the assessed risks and needs of the probationer, must be designed to reduce recidivism, and must be adjusted if the court determines adjustments are appropriate." MCL 771.3(11). Thus, a "trial court's exercise of its discretion 'must be guided by what is lawfully and logically related to the defendant's rehabilitation.' " *Hess*, ___ Mich at ___; slip op at 11, quoting *Houston*, 237 Mich App at 719.

"[C]onditions of probation may [also] not be violative of constitutional safeguards[.]" *Del Rio*, 10 Mich App at 620 n 3. This Court has explained that convicted defendants retain constitutional rights, "but those rights are subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *People v Ison*, 132 Mich App 61, 64; 346 NW2d 984 (1984). Although we have consistently given careful consideration to constitutional challenges to probation conditions, see, e.g., *People v Branson*, 138 Mich App 455; 360 NW2d 614 (1984); *People v Miller*, 182 Mich App 711; 452 NW2d 890 (1990), we take this opportunity to elucidate the precise legal standard under which we review such challenges—that is, the degree to which a probation condition may permissibly impinge on a constitutional right to serve the state's legitimate interests.

Having surveyed the approach taken by many of our sister courts,[3] we observe that various formulations of such a standard are in use. In California, for example, "[a] probation condition imposing limits on constitutional rights must be closely tailored to its legitimate objective . . . ." *People v Patton*, 41 Cal App 5th 934, 946; 255 Cal Rptr 3d 1 (2019). In Alaska, a probation condition must be "narrowly tailored to avoid unnecessary interference with the constitutional right at issue." *Glasgow v State*, 355 P3d 597, 600 (Alas App, 2015). In Wisconsin, "conditions of probation may impinge upon constitutional rights as long as they are not overly broad and are reasonably related to the person's rehabilitation." *State v Oakley*, 245 Wis 2d 447, 469; 2001 WI 103; 629 NW2d 200 (2001) (quotation marks and citation omitted). The Supreme Court of Florida and the United States Court of Appeals for the Sixth Circuit have both held that conditions that burden or restrict constitutional rights must be subjected to "special scrutiny." *Larson v State*, 572 So 2d 1368, 1371 (Fla, 1991); *United States v Holloway*, 740 F2d 1373, 1383 (CA 6, 1984). See also *United States v Loy*, 237 F3d 251, 264 (CA 3, 2001) ("[T]o avoid First Amendment infirmity, a probation condition must be 'narrowly tailored' and 'directly related' to the goals of protecting the public and promoting [the defendant's] rehabilitation."); *Galindo v State*, 481 P3d 686, 691 (Alas App, 2021) (also employing "special scrutiny").

Considering these decisions together, several features of a prevailing analytical framework emerge. Broadly speaking, any condition of probation must be related to the legitimate objectives of probation, which in Michigan is focused on the defendant's rehabilitation. See *People v Peters*, 191 Mich App 159, 164-165; 477 NW2d 479 (1991). If such a condition restricts the defendant's exercise of a constitutional right, then there must be a close enough means-ends fit between the

---

[3] Decisions from other jurisdictions are not precedentially binding, but they may be considered for their persuasive value. *People v Baham*, 321 Mich App 228, 240 n 2; 909 NW2d 836 (2017).

condition and its objective so that the constitutional rights of the defendant are not unnecessarily or unduly burdened. And courts must pay special attention to restrictions that implicate constitutional rights to ensure that this standard is honored. We therefore hold that when a probation condition implicates a defendant's constitutional rights, a court must apply special scrutiny to ensure that the condition is reasonably related to the rehabilitation of the defendant and narrowly tailored to avoid unnecessary interference with the constitutional right at issue. See *Galindo*, 481 P3d at 691; *Simants v State*, 329 P3d 1033, 1038-1039 (Alas App, 2014). Applying special scrutiny to ensure narrow tailoring affords "zealously guarded" constitutional rights the special consideration they are warranted under our jurisprudence, see *People v Mulier*, 12 Mich App 28, 34; 162 NW2d 292 (1968), and will aid in standardizing our approach to considering such challenges.

Turning to the probation condition at issue here, which was ultimately enforced as barring defendant from having contact with her husband, we conclude that special scrutiny is warranted. Defendant challenges the probation condition as an unconstitutional infringement upon her freedom of association and the privacy of her spousal relationship. "The [United States Supreme] Court has recognized that the freedom to enter into *and carry on* certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights. . . . The intimate relationships to which [it has] accorded constitutional protection include marriage." *Bd of Dirs of Rotary Int'l v Rotary Club of Duarte*, 481 US 537, 545; 107 S Ct 1940; 95 L Ed 2d 474 (1987) (emphasis added). Given that the right to marry is itself a fundamental right, *Pueblo v Haas*, 511 Mich 345, 361; 999 NW2d 433 (2023), and there is both a "freedom of association right protecting against government interference in intimate human relationships[,]" *Mich State AFL-CIO v Employment Relations Comm*, 453 Mich 362, 371 n 5; 551 NW2d 165 (1996), citing *Roberts v US Jaycees*, 368 US 609, 617-622; 104 S Ct 3244; 82 L Ed 2d 462 (1984), as well as a constitutional right to marital privacy, see *Griswold v Connecticut*, 381 US 479, 486; 85 S Ct 1678; 14 L Ed 2d 510 (1965); *People v Gunnett*, 158 Mich App 420, 428; 404 NW2d 627 (1987), we have little trouble concluding that defendant's probation condition, insofar as it restricted contact with her spouse, implicates her constitutional rights. Therefore, we must apply special scrutiny here to determine whether the condition was reasonably related to rehabilitating defendant and narrowly tailored to avoid unnecessary interference with her associational rights and her right to marital privacy.[4]

---

[4] Again, this approach is consistent with decisions, which we find persuasive, from multiple other jurisdictions. See, e.g., *State v Reiger*, 286 Neb 788, 793-796; 839 NW2d 282 (2013) (describing cases from appellate courts in Alaska, Oregon, Washington, California, and Massachusetts in support of its holding that "a condition of probation which prohibits or restricts a probationer's contact with a spouse" must "be narrowly tailored and reasonably related to the rehabilitative process"); *Diorec v State*, 295 P3d 409, 414 (Alas App, 2013) ("[C]onditions of probation restricting family associations must be subjected to special scrutiny because they implicate important constitutional rights."); *Cossio v Marceno*, 334 So 3d 696, 698 (Fla App, 2022) (citing various state and federal decisions in stating that "[b]ecause sweeping no-contact orders prohibiting defendants from making contact with their spouses implicate the fundamental right of marriage, courts have consistently been reluctant to uphold such orders and, absent extraordinary

Utilizing this standard in the present case, we reiterate that the plain-error standard applies here, meaning that defendant bears the burden of demonstrating both that an error occurred and that the error is "plain, i.e., clear or obvious." *Pipes*, 475 Mich at 279. We are also partially hindered in our review because it is not clear whether we have been provided all records from the ARC in which the then-existing restrictions on defendant's contact with her husband were tightened so as to become a complete ban on all contact.[5] Based on the facts before us, we cannot say that the trial court committed a clear or obvious error in imposing the restriction or sanctioning defendant following her violations.

As we have described, the trial court initially provided defendant with a partial exemption from Special Condition 9.04's prohibition on contact with anyone known to have a felony record after learning that defendant's husband had felony convictions. For despite raising concern about defendant potentially prioritizing her relationship with Beemer above her recovery and Beemer's past involvement with drugs, the trial court initially imposed no restrictions on defendant's contact with her husband provided that they were both doing well in recovery. Only after defendant violated the mandate that she comply with tether requirements as directed by the ARC did the trial court impose restrictions on defendant's contact with her husband in February 2024 (allowing phone contact and transportation to legitimate appointments), restrictions to which defendant apparently agreed. Notably, those tether violations were specifically attributed by defendant's probation agent to defendant "being with her husband[,]" a characterization defendant does not challenge nor does any record evidence contradict. And at that probation violation hearing, the court again emphasized the importance of ensuring Beemer did not negatively impact defendant's recovery. Finally, the complete no-contact condition defendant challenges on appeal was imposed only after the ARC determined that defendant again failed to comply with her tether schedule on multiple occasions, violations which were again attributed, without contradictory record evidence, to defendant "being with her husband."

Inasmuch as the record reflects that defendant's husband was determined to be the reason why defendant did not comply with her mandated ARC programming requirements, a graduated escalation of restrictions imposed on defendant's contact with him was both reasonably related to defendant's rehabilitation and narrowly tailored to avoid unnecessary interference with her constitutional rights. The first prong—the reasonable relationship requirement—is satisfied. As our Court has previously recognized: "The prohibition of association with a person with a criminal record is not an unusual condition of probation. *Usually*, this condition bears a rational relationship to a defendant's rehabilitation, and *generally* would be considered lawful." *Miller*, 182 Mich App 714 (emphasis added). In this case, Beemer had prior convictions for possession of methamphetamine and tampering with a monitoring device, and defendant's probation violations similarly involved relapsed methamphetamine use and, while spending time with Beemer, tether violations. Defendant's violations of the ARC program's tether requirements, in turn, undermined her rehabilitation, as the program was itself imposed with the aim of steering defendant away from

---

circumstances, generally draw the line at restrictions that go beyond the scope of the pending cases").

[5] Developments in the ARC were described in defendant's probation violation recommendation report, which is a part of the record.

continued involvement with drugs. Cf. *People v Roth*, 154 Mich App 257, 258-259; 397 NW2d 196 (1986) (in a drug conviction case, a urinalysis testing condition was "lawful and rationally tailored to defendant's rehabilitation"). Thus, there was a reasonable relationship between the no-contact restriction and defendant's rehabilitation.

As for the second prong—the narrow tailoring requirement—the evidence we have indicates that this was satisfied as well. Recall that the trial court initially allowed defendant to have unrestricted contact with her husband once it was brought to her attention that Special Probation Condition 9.04 would, on its face, bar any such contact due solely to Beemer's felony convictions. Had the trial court insisted on maintaining a blanket no-felon prohibition without giving the matter individualized consideration, we would likely reject the restriction as insufficiently tailored. Cf. *State v Martin*, 282 Or 583, 585, 589; 580 P2d 536 (1978) (modifying a similar probation condition where the defendant's husband had a criminal conviction and the trial court failed to determine "whether as a matter of fact the spouse would be a bad influence so as to endanger rehabilitation or public safety and, if so, what interference with marital rights less than complete separation would [have] serve[d] to protect society's interests"); *United States v Hobbs*, 845 F3d 365, 367-369 (CA 8, 2016) (vacating a condition barring the defendant from contact with her husband because there was insufficient evidence that he influenced her to violate her supervised-release conditions and the trial court did not consider more narrowly tailored alternatives). Here, though, the trial court imposed a restriction (but not complete ban) on contact only after it was evident that contact with Beemer was undermining defendant's success in the ARC program, and a complete ban took effect only after even that restriction proved ineffective. In this way, we are satisfied that the no-contact condition "appropriate[ly] . . . tailor[ed] a close fit between the scope of the order restricting marital association and the specific needs of the case at hand[,]" *Dawson v State*, 894 P2d 672, 681 (Alas App, 1995); the condition was evidently an adapted, final attempt to assist defendant in successfully completing the ARC program, imposed only when it was deemed necessary to interfere so significantly in defendant's marriage.[6] As such, we cannot say on the record before us that a clear error occurred and conclude that this condition, as applied in these particular circumstances, survives special-scrutiny review. See *Pipes*, 475 Mich at 279.

## IV. CONCLUSION

For the reasons stated, special scrutiny is warranted in this case because the trial court sanctioned defendant for violating a probation condition restricting contact with her husband, a condition that necessarily implicated defendant's constitutional rights to freedom of association and marital privacy. On the record before us, however, defendant has not demonstrated that the

---

[6] Some no-contact restrictions are imposed to protect a spouse from a threat of violence. Such conditions are reasonably related to rehabilitation and narrowly tailored. See, e.g., *People v Graber*, 128 Mich App 185, 192-193; 339 NW2d 866 (1983) (upholding no-contact restriction when requested by defendant's wife following assaultive and threatening behavior).

trial court committed plain error by imposing and enforcing the probation condition under the circumstances of this case. The judgment of the trial court is therefore affirmed.

/s/ Daniel S. Korobkin
/s/ Michael J. Kelly
/s/ Sima G. Patel